## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

VERNESSA SMITH ARNOLD                                                                                      PLAINTIFF

v.                                              4:12CV00347-DPM-JJV

CARL JOHNSON, Dr., Pulaski County
Detention Facility; *et al*.                                                                              DEFENDANTS

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.  Why the record made before the Magistrate Judge is inadequate.

2.  Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  INTRODUCTION

Plaintiff, Vernessa Arnold, filed this *pro se* action pursuant to 42 U.S.C. § 1983, while confined at the Pulaski County Detention Facility (Jail), alleging deliberate indifference to her serious medical needs in violation of the Eighth Amendment. She has since been released from incarceration. (Doc. No. 18.) This Court previously dismissed Defendants Dr. Carl Johnson, Sheriff Doc Holladay, and Grievance Officer Brawley, on October 18, 2012, finding that Plaintiff failed to state a claim against them upon which relief could be granted (Doc. No. 12).

On October 2, 2013, this Court held an Evidentiary Hearing on Plaintiff's allegations against Defendant Cathy Smith. After carefully considering the testimony of the parties and witnesses, and exhibits, the Court enters the following Proposed Findings and Recommended Disposition.

### II. FACTS AND ANALYSIS

#### A.  Amended Complaint

Arnold alleges that while incarcerated at the Jail, Nurse Smith denied her access to medication for her illness, myasthenia gravis. (Doc. No. 8 at 4.) She wrote to Sheriff Holladay about the problem, and he referred her to Randy Morgan. (*Id*. at 5.) She further states her requests to see Dr. Johnson were thrown away, and Defendant Brawley, the grievance officer, "always agrees with staff." (*Id*. at 6.)

### B.     Testimony and Evidence presented at the Hearing

    1.     Vernessa Arnold.

Ms. Arnold is a 57-year-old female who was diagnosed in 1992 with myasthenia gravis, a muscle disorder which causes her difficulty in swallowing and causes her eyes to cross. She is prescribed Mestinon to reduce the symptoms of her disease. Her prescription requires she take the drug five times daily, but, due to side effects, she takes only two or three doses per day.

She was booked into the Jail on March 21, 2012,[1] and during the intake process she told medical personnel of her condition and medications. Two to three days later she saw Nurse Smith in the barracks and asked about getting her medication. Nurse Smith told her they had called the pharmacy and were advised there was no active prescription.

Arnold had been incarcerated in the Jail several times in the past and Nurse Smith was familiar with her medical condition and need for medication. Although Nurse Smith helped Plaintiff obtain her medication in the past, this time, she refused. Twice Nurse Smith and other Jail officials refused to accept Plaintiff's medication or glasses from her mother and father. Plaintiff believes Smith denied her medications because she became angry with Arnold's father when he tried to bring the medication to the Jail.

Plaintiff was incarcerated nine months without her medication, during which time she suffered from bladder and eyesight problems, and difficulty swallowing. She saw the Jail doctor, Dr. Johnson, on about four occasions, but he prescribed only Benadryl and Risperdal. (He had prescribed Mestinon for Plaintiff during her incarceration in April 2011.) Plaintiff also saw the psychiatrist several times. Jail staff threw away many of her sick call requests and grievances, and

---

[1] Defendant later introduced Plaintiff's medical intake screening form which indicates that she arrived at the Jail on April 21, 2012. However, she denied this date on cross examination. *See* Defendants' Exhibit 1.

she was without glasses for about three months.  Immediately after she was released from Jail, she saw her physician, Dr. Gary Nunn, who prescribed Mestinon and other medications to treat medical issues which developed during her incarceration.  Arnold stated she was referred to another specialist - Dr. Truman - but could not provide specific information about this doctor.

       2.     Dr. Gary Nunn

Dr. Gary Nunn diagnosed Plaintiff with myasthenia gravis and treats her with Mestinon.  He testified that myasthenia gravis is a disease of the neuromuscular juncture where the body makes antibodies which interfere with the nervous system's input to control muscles.  The disease causes muscle weakness and is improved with medication.  Dr. Nunn is not aware of how often Plaintiff takes her medication, and has never hospitalized Plaintiff due to complications from her illness.  He periodically receives requests from Plaintiff for refills of medication, which usually last about six months.  He recalled treating her after she was released from Jail, but did not remember her medical conditions.  He also did not know a Dr. Truman and did not recall referring Ms. Arnold to another physician.

       3.     Robert Hymer Sr.

Mr. Hymer is Vernessa Arnold's father.  He visited the Jail in April 2012 to deliver the medication and glasses to Plaintiff.  Three Jail staff members refused to accept them, despite his efforts to convince them otherwise.  He had been able to deliver medication to the Jail for Plaintiff in 2011.

       4.     Esther Smith Rhodes

Ms. Rhodes is Vernessa Arnold's mother.  After jail officials refused to accept Plaintiff's medication from her father, Ms. Rhodes tried to deliver it.  However, Jail officials again refused to

accept the medication.

      5.     Cathy Smith

Ms. Smith is a registered nurse who has been employed at the Jail for over nine years. She interacted with Plaintiff five or six times, but did not see Plaintiff during the intake interview in April 2012. Plaintiff approached her in the barracks where Smith was treating another inmate, and asked about getting her medication. Smith told Arnold she would have to check her chart. The chart noted that a medical staff member had called Plaintiff's pharmacy and was told that Plaintiff did not have a current prescription for Mestinon and Ms. Arnold had last used the pharmacy in February 2012. *See* Defendant's Exhibit 4.

Nurse Smith did not recall a confrontation with Mr. Hymer but was aware that Plaintiff previously received Mestinon at the Jail and her family brought it at that time. In 2011, when it was discovered that the medication brought by family was outdated, Dr. Johnson wrote a prescription for the Plaintiff. Nurse Smith does not know why Dr. Johnson did not similarly prescribe Mestinon for Plaintiff in 2012. But if the Jail physician does not prescribe a medication for an inmate, Nurse Smith testified she does not have the authority to accept that medication from the family.

      6.     Exhibits

Defendant's Exhibit 1 is Arnold's intake form dated April 21, 2012. The form states Plaintiff's medical conditions include myasthenia gravis and depression. The form also includes a notation to observe for alcohol withdrawal because Plaintiff had been consuming one pint of alcohol daily. The inmate questionnaire also noted that Plaintiff does not wear glasses or contact lenses,[2] and is prescribed Trazodone and Mestinon.

Defendant's Exhibit 2 is a record of the Physicians' Orders for April 21 and 25, May 15, and

---

[2] Plaintiff wore glasses at the hearing.

July 8 and 17, 2012.  Plaintiff was treated on these dates and prescribed various medications - but not Mestinon.

Defendant's Exhibit 3 is a progress note by Dr. Johnson on April 25, 2012.  He noted that Plaintiff was alert and stable, and prescribed Benadryl and an unknown medication.

Defendant's Exhibit 5 is the Physician's Orders for Plaintiff's incarceration in 2011. According to those notes, on February 23, 2011, Jail officials tried to verify Plaintiff's medication by contacting Dr. Nunn.  They received records from Dr. Nunn, and on March 1, 2011, Dr. Johnson agreed to permit Plaintiff's family to bring Mestinon.  Plaintiff also was prescribed Risperdal on March 8, 2011, and Benadryl and HCTZ on March 9, 2011.

**C.     Analysis**

Plaintiff testified she was incarcerated at the Jail as a pretrial detainee.  Although the due process standard of the Fourteenth Amendment applies to determine the constitutionality of pretrial detainees' conditions of confinement, the standards applied to those claims are the same as applied to Eighth Amendment claims filed by inmates convicted of an offense.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994).  Therefore, in order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendant acted with deliberate indifference to a serious medical need.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

Even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).  *See also Smith v. Marcantonio,* 910 F.2d 500, 502 (8th

6

Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).

Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany*, *supra*, 132 F.3d at 1240.

After careful consideration of the testimony and exhibits, the Court concludes Defendant Smith did not act with deliberate indifference when refusing to accept Plaintiff's medication. Rather, the Court finds the denial of Plaintiff's medication resulted in an unfortunate set of circumstances resulting from a lack of communication and misunderstanding.

Vernessa Arnold understandably believes Nurse Smith was acting unfairly when refusing to accept her medication as she had done on prior occasions. And she reasonably believes Nurse Smith's unwillingness to act was in retaliation for words exchanged with her father.

But the evidence reveals that Nurse Smith was simply unwilling to act without a doctor's orders. The exhibits clearly show that it was only pursuant to the doctor's orders that medical staff had ever accepted medication from the family. And Nurse Smith testified that as a registered nurse, she is not permitted to act contrary to the physician's orders and could not legally accept the

7

medication brought by Plaintiff's parents. The Court accepts this explanation as true and as justification for her actions.

Plaintiff's case is further complicated by the fact that Plaintiff's pharmacy would not verify her medication and the Jail physician did not prescribe Mestinon. Plaintiff's medical records show the Jail physician saw her on five occasions, and prescribed other medication but not Mestinon. Prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996); *See Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (treatment disagreement did not establish deliberate indifference); *See Also Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (disagreement about proper course of treatment not actionable under the Eighth Amendment"). The United States Court of Appeals for the Eighth Circuit has explained:

> Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.' 'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference.

*Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (citations omitted). Deliberate indifference is measured by the official's knowledge at the time in question, not by hindsight perfect vision. *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

While the Jail physician and medical staff appear to have gone above and beyond their duties in 2011 to obtain Plaintiff's medication, their failure to do the same in 2012 does not support a finding of deliberate indifference. As noted above, prison physicians are entitled to exercise their

8

medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix,* 86 F.3d at 765. Therefore, the Court finds that Plaintiff fails to support an Eighth Amendment claim against Defendant Smith.

### III. CONCLUSION

IT IS THEREFORE RECOMMENDED that Plaintiff's Complaint against Defendant Smith be DISMISSED with prejudice.

DATED this 8th day of October, 2013.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE